IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HASSAN FREEMAN,                    )
                                   )
              Plaintiff,           )
                                   )
      vs.                          )   Civil Action No. 00-635
                                   )
JANIS NIEMIEC,                     )
                                   )
              Defendant.           )

## OPINION

In this civil action, plaintiff, Hassan Freeman, asserts that, while he was incarcerated in the State Correctional Institution at Greene ("SCI-Greene"), defendant, Janis Niemiec, a Corrections Counselor at SCI-Greene, retaliated against him for the exercise of his First Amendment right to petition for redress of grievances in violation of 42 U.S.C. § 1983. After a non-jury trial, the Court makes the following Findings of Fact and Conclusions of Law. For the reasons stated therein, judgment will be entered in favor of defendant and against plaintiff.

Findings of Fact

1.   In 1999, plaintiff was incarcerated at SCI-Greene.[1] At all relevant times, defendant was a Corrections Counselor 2 at SCI-Greene who was responsible for the care, custody and control

_____

1. Due to behavioral problems while incarcerated at two other state prisons, plaintiff was transferred to SCI-Greene which is a maximum security prison.

of the inmates assigned to her.[2]   In July, 1999, plaintiff was
assigned to defendant.

2.   In June, 1999, prior to his assignment to defendant
for counseling services, plaintiff met with prison staff to
prepare for his first parole review.  In September, 1999, while
assigned to defendant for counseling services, plaintiff met with
the Parole Board, and, in November, 1999, plaintiff received the
Parole Board's decision denying his request for parole.   The
reasons for the denial of parole to plaintiff were his alleged
failure to complete several required programs while incarcerated
and his failure to maintain misconduct-free behavior while
incarcerated.

3.   Following the denial of plaintiff's initial parole
review, plaintiff spoke with defendant to determine what steps he
could take to ensure that he was granted parole at the time of
his next parole review.  As to plaintiff's alleged failure to
complete several required programs during his incarceration, he
had, in fact, completed the programs, and defendant informed

---

2. The position of Corrections Counselor 2 involves "advanced
professional work in counseling and providing casework services
to inmates" in Pennsylvania correctional institutions and
facilities and community corrections centers.  An example of the
work performed by a Corrections Counselor 2 is the provision of
"intensive and extensive counseling services to inmates
identified with unusually difficult behavior and adjustment
problems."    (Pl's Exh. 5).  With regard to defendant's
qualifications for the position, defendant has a Master's Degree
in clinical psychology.

plaintiff that the certificates showing his completion of these programs were missing from his file.[3]  Plaintiff maintains that he believed defendant was going to conduct an investigation into the missing program certificates.

4.   In December, 1999, due to confrontational behavior toward staff members, including defendant, plaintiff was moved from the Level 3 housing unit on which he had been housed to a Level 4 or higher security level housing unit at SCI-Greene, and defendant was no longer his counselor.  Despite this fact, plaintiff continued to engage in aggressive behavior toward defendant, *i.e.*, yelling to her, whenever he would see her on the prison walkway.[4]

5.   On January 21, 2000, while plaintiff was in the Program Services lobby of SCI-Greene for the purpose of attending religious services known as "Juma," he observed defendant enter the building.  Plaintiff called out to defendant; however, she

_____

3. Plaintiff does not claim that defendant removed the certificates from his file.  In fact, plaintiff testified that he does not know who removed them.  Plaintiff also testified that because he was "not an angel" while incarcerated, he was not surprised by his initial denial of parole, but that he wanted to prepare for the next review.

4. According to defendant's trial testimony, which the Court finds credible, plaintiff was "in her face" for six weeks regarding his failure to be returned to the Level 3 housing unit at SCI-Greene, and he refused to accept her response concerning the reason for his failure to be returned to the Level 3 housing unit.

3

entered the Inmate Employment Office without acknowledging
plaintiff.

6.   When defendant exited the Inmate Employment Office
on January 21, 2000, plaintiff approached her and a confrontation
occurred in the Program Services lobby.  Although plaintiff
contends that he approached defendant in an attempt to informally
resolve a grievance he intended to file against defendant as a
result of her failure to procure the missing program certificates
for his parole file, the Court does not find such testimony
credible.[5]  Rather, the Court finds that plaintiff approached
defendant to complain about the placement of his cousin in the
restrictive housing unit at SCI-Greene and the adverse effect
such placement would have on his cousin's transfer to a prison
that was closer to his home.  When defendant refused to discuss
plaintiff's cousin, he stuck a document in her face that was
captioned "Conduct Violations of Janis Niemiec" and stated that
he was going to send the document to the newspaper.  After

_____

5. In support of his claim that he approached defendant on
January 21, 2000 to attempt to resolve informally a grievance he
intended to file against defendant, plaintiff notes that under
Pennsylvania Department of Corrections policy which was in effect
at the time of his incarceration at SCI-Greene, an inmate was
expected to attempt to resolve problems or differences with staff
on an informal basis through direct contact or by sending a
request slip to the appropriate staff member prior to filing a
grievance pursuant to the Inmate Grievance Review System.  (Pl's
Exh. 1A).

4

several more exchanges between plaintiff and defendant, plaintiff
left the Program Services lobby to attend religious services.

7.  As plaintiff was leaving religious services on
January 21, 2000, he was approached by three Corrections Officers
and escorted to the restrictive housing unit of SCI-Greene based
on a misconduct report that had been prepared by defendant as a
result of her earlier confrontation with plaintiff in the Program
Services lobby.  The misconduct report, which was based on
allegations of (1) threatening an employee or their family with
bodily harm,[6] (2) refusing to obey an order and (3) presence in
an unauthorized area, describes defendant's version of the
January 21st confrontation as follows:

> While enroute from K Block to Program Services, it
> was first noted that Inmate Freeman BD0390 was loudly
> yelling "Ms. Niemiec" while walking behind Ms. J. Bean
> CCII and myself.  I did not stop and speak with him on
> the walkway.  Ms. Bean and I entered Program Services
> and proceeded to Inmate Employment.  As we were
> leaving, inmate Freeman was waiting in the lobby and
> immediately approached us.  He wanted to know why his
> cousin (Derrick Taylor CY2480) had been locked up.  I
> stated "We are not discussing your cousin."  He further
> stated his cousin wanted a transfer to be close to home
> and this could mess up his transfer.  Again, I stated
> "We are not discussing your cousin and we are done
> talking."  He aggressively approached me and pulled out
> a couple pieces of paper and stated "If he doesn't come

_____

6. At trial, plaintiff attempted to discredit defendant's claim
that she felt threatened by his behavior on January 21, 2000 by
noting that defendant did not activate her distress device.
However, the Court accepts defendant's explanation for her
failure to activate her distress device: namely, plaintiff had
not actually assaulted her and other staff members were present
during the confrontation.

out of the hole, I will have to turn in these
violations you have committed." He was about 1 foot
away from me and pointed to the top line that read
"Conduct Violations of Janis Niemiec." He asked would
I like a copy so I would know what to expect.   I
informed inmate Freeman that I considered his actions a
threat and I did not need a copy as I do my job
responsibly.   I instructed him to return to where he
was supposed to be.   As I started to walk away, he
became agitated and stated in a hostile manner "You
know I am not afraid of the hole, Ms. Niemiec." Again,
I ordered him to return to where he was to be.   He
refused my order and continued to argue as I walked
away.   I then asked the officer in the lobby, CO Noak,
to have him return.   CO Noak gave two additional orders
to inmate Freeman before he finally returned to Juma.

(Pl's Exh. 3).

8.   Following a hearing on the misconduct charges filed
by defendant against plaintiff, he was found guilty of failing to
obey an order.[7] As a result, he served 60 days in the
restrictive housing unit of SCI-Greene.   On February 23, 2000,
while in the restrictive housing unit, plaintiff attempted to
file an inmate grievance concerning defendant's alleged
retaliation against him (*i.e.*, filing the misconduct report
against plaintiff on January 21, 2000) due to his alleged stated
intention of filing a grievance against her.   (Pl's Exh. 2).
However, the grievance was returned to plaintiff because it
involved an issue (*i.e.*, inmate discipline) that was not subject

---

7. The other two misconduct charges (*i.e.*, threatening an
employee or their family with bodily harm and presence in an
unauthorized area) were dismissed.

6

to the Inmate Grievance Review System at SCI-Greene. (Pl's Exh. 2).

      9.  Plaintiff's placement in the restrictive housing unit at SCI-Greene expired on March 20, 2000. At that time, plaintiff was placed in administrative custody pending a hearing to determine whether plaintiff was a danger to any person at SCI-Greene who could not be protected by alternate means. Plaintiff's placement in administrative custody pending a hearing was the result of an Official Staff Separation that had been filed at defendant's request by her supervisor due to defendant's claim that she felt threatened by plaintiff.[8]  (Pl's Exh. 7). Plaintiff remained in administrative custody at SCI-Greene for 90 days.  Subsequently, plaintiff was transferred to another state prison.[9]

---

8. In this connection, plaintiff testified that refusing to obey an order - the only misconduct of which he was found guilty as a result of the misconduct report filed by defendant on January 21, 2000 - could not have precipitated his transfer from SCI-Greene to another prison because he refused to obey orders on numerous occasions and the issue of a transfer as a result of such disobedience was never raised.

9. According to defendant, the Superintendent of SCI-Greene decided to transfer plaintiff to another prison due to his history of maladjustment at other prisons, as well as his history of incidents while incarcerated at SCI-Greene (not just the incident of January 21, 2000).  At the time of trial, plaintiff was no longer in custody.  He had been on parole since October, 2002.

Conclusions of Law

      1.  An individual has a viable civil rights claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights.  Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977). Persons in prison, like other individuals, have a right under the First Amendment to the Constitution to petition the government for redress of grievances.  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir.1981).

      2. To establish his civil rights claim in the present case, plaintiff has the burden of establishing (a) that he was attempting informally to resolve a grievance when he approached defendant in the Programs Services lobby of SCI-Greene on January 21, 2000; (b) that defendant responded to this protected activity by retaliating against plaintiff; and (c) that plaintiff's protected activity was the cause of defendant's retaliation. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997).  After consideration, the Court concludes that plaintiff has failed to meet his burden.

      3.  As an initial matter, the Court finds that plaintiff was not attempting to resolve a grievance against defendant on an informal basis when he confronted her on January 21, 2000.  Rather, the Court believes that plaintiff's purpose in

8

confronting defendant on that day was to complain about his
cousin's placement in the restrictive housing unit of SCI-Greene
and the effect of such placement on his cousin's desire to be
transferred to a prison closer to his home.  However, even if
plaintiff was attempting informally to resolve a grievance when
he confronted defendant on January 21, 2000, he still has not met
his burden of establishing a claim of retaliation because the
Court also finds that defendant did not file the misconduct
report against plaintiff in retaliation for the grievance.
Instead, defendant filed the misconduct report based on her
concern about plaintiff's hostility regarding his cousin's
situation - not based on any alleged concern about the
possibility that plaintiff was going to file a grievance against
her for failing to locate the program certificates that were
missing from his parole file.  In this connection, the Court
notes that there was more than sufficient evidence presented at
trial to support defendant's fear of plaintiff, including
evidence of a long history of confrontational behavior which
resulted in several prison transfers.  Based on the foregoing,
judgment will be entered in favor of defendant and against
plaintiff.

An order follows.